UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA FRYE, as Personal
Representative of the Estate of
SHYAN FRYE,

       Plaintiff,

v.

CSX TRANSPORTATION, INC., et al.,

       Defendants.
                                  /

Case No. 2:14-cv-11996

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [34]**

Shyan Frye, a minor, was struck and killed by a train when traversing a grade crossing in Wayne County, Michigan. Her mother, Jessica Frye ("Frye"), brought suit based on negligence in her capacity as the personal representative of the Estate of Shyan Frye. Defendants are the owners, maintainers, and operators of the railroad crossing and the train that struck Shyan. Defendants removed the case and filed a motion for summary judgment. Because the briefing failed to clearly state the claims in genuine dispute, the Court denied the motion without prejudice and ordered the parties to confer and rebrief. They did so, and their efforts resulted in the present motion for summary judgment. The Court held a hearing and will, for the reasons below, grant the motion in part and deny it in part. The Court will also order the parties to mediate prior to trial.

**BACKGROUND**

West Road runs east-west in Huron Charter Township, Michigan. ECF 34, ¶ 1. It is bisected by Lincoln Secondary, a railroad track running north-south. *Id.* ¶ 2. The grade crossing where the road and track meet is equipped with signs and signals which, along

with the crossing itself, are maintained by Defendant Consolidated Rail Corporation ("Conrail"). *Id.* ¶¶ 5, 37.

On April 15, 2011, 13-year-old Shyan Frye was walking her bicycle eastbound on West Road toward the grade crossing. ECF 1-2, ¶ 17. She proceeded into the crossing itself and onto the tracks. There, she was struck and killed by Defendant CSX's Locomotive 8454, which was headed northbound. The train was operated by CSX employees, including Defendant Gallacher, the conductor, and Defendant Fischer, the engineer. ECF 34, ¶¶ 18–19. The entire sequence of events took place in the course of about 40 seconds.

Other events leading up to the tragedy are undisputed. Fischer began sounding the lead locomotive's horn 19 seconds before impact and he did not apply the breaks until just before impact with the girl. Both Fischer and Gallacher saw Shyan before she was struck. And at the time of the accident, the train was traveling at about 43 miles per hour—seven miles an hour below the speed limit.

What the parties dispute is the timing and order of the events. Defendants claim that when Shyan was first spotted, she was standing beside the tracks, but had not yet crossed onto them. They claim that she only proceeded onto the tracks just before the train arrived at the crossing. Frye contends that she was on the tracks with her bicycle wheel stuck from the moment the defendants first spotted her—while the train was still a quarter of a mile off. The parties also disagree on the particular sequence of long and short horn blasts.

## STANDARD OF REVIEW

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute an

2

"essential element[] of a cause of action or defense asserted by the parties[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And although the Court may not make credibility judgments or weigh the evidence, *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015), a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252.

## DISCUSSION

I.  Abandoned Claims

In the first round of briefing, the parties disputed whether Defendants' motion for summary judgment was all-encompassing or merely a motion for partial summary judgment that left some claims unaddressed. Frye argued that Defendants failed to address some of the theories of liability asserted in her complaint, while Defendants, in their reply, argued that Frye had abandoned certain claims. Pursuant to the Court's subsequent order, the parties conferred and Defendants' new brief listed five discrete issues of liability. *See* ECF 34, PgID 875. Frye did not dispute the list, and responded to the arguments raised by Defendants' in their brief.

"[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). The abandonment need not be explicit and "such an inference may be fairly drawn from the papers and circumstances viewed as a whole[.]" *Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014). If summary judgment is granted, the Court "must provide an explanation sufficient to allow appellate review. This explanation should, where appropriate, include a finding of abandonment of undefended claims or defenses." *Id.* at 198.

In light of the Court's direction to rebrief the motion, Defendants' clear statement concerning the outstanding issues, and Frye's declination to respond, the Court finds that all claims but the following have been abandoned:

    a) Negligence (Failure to Slow the Train);

    b) Negligence (Failure to Maintain the Grade Crossing);

    c) Negligence (Failure to Train Employees Regarding Inspection or Repair of Crossings); and

    d) Negligence (Failure to Properly Sound the Horn).

II. <u>Failure to Slow the Train</u>

Frye alleges that Defendants were negligent in failing to slow the train upon seeing Shyan in the crossing. Defendants argue that the crew had no duty to slow the train or apply the brakes earlier than they did and were therefore not negligent.

Under Michigan law, train operators may assume that a seemingly able-bodied person will exercise "reasonable precautions" to observe any oncoming trains and will "seasonably step aside." *Bonner v. Grand Trunk W. Ry. Co.*, 191 Mich. 313, 319 (1916). As such, train operators have no duty to stop "simply because they see ahead of them

4

upon or approaching the track persons who are apparently without disability and of sufficient age to understand the hazards of a railroad track[.]" *Wexel v. Grand Rapids & I. Ry. Co.*, 190 Mich. 469, 477 (1916). Even minors of a sufficient age are presumed to recognize and avoid risk. *See Trudell v. Grand Trunk R. Co.*, 126 Mich. 73, 80–81 (1901) (noting that the train's engineer would be justified in believing a seven-year-old boy would step off the tracks in time to avoid injury); *accord Berlin v. Chicago & N.W. Ry. Co.*, 261 Mich. 479, 482–83 (1933) (concerning a nine-year-old child). Thus, the operator of a train is under no obligation to slow the train until there is "something manifestly indicating to him" that a person will step onto the track "regardless of the imminent danger[.]" *Tomes v. Detroit, T. & I.R. Co.*, 240 Mich. 133, 139 (1927).

Frye argues that there were manifest indicators. She claims that when the train crew first saw Shyan, she was already on the tracks and that her "appearance and conduct" revealed that she "did not appreciate the danger" of the oncoming train. ECF 35, PgID 1126. As evidence, Frye points to a police report reflecting that Gallacher reportedly stated to an officer that Shyan had trouble moving her bike off the tracks, that she never looked up, and that she seemed to be "preoccupied with the bike or possibly listening to music." ECF 34-13, PgID 1092; ECF 35, PgID 1126. According to Frye, the train crew should have therefore slowed down upon first seeing Shyan—when the train was about a quarter of a mile from the crossing—rather than waiting to apply the brakes until just before the collision.

Defendants dispute the claim that Shyan was already on the tracks when they first spotted her. They point to the deposition testimony of Gallacher and Fischer, who both stated that when they first saw Shyan, she was standing near the track, not on it, and that

5

she did not move into the path of the train until it was almost into the crossing. ECF 37, PgID 1670. Defendants argue that until then, they could rightly "assume she would not go onto the track." *Id.* As for the police report, Defendants counter that it does not say at what point in time, prior to the collision, Shyan was on the track and therefore does not contradict Gallacher's later deposition testimony. *Id.* at 1671. And finally, Defendants argue that even if Shyan "was standing on the track when first seen by the crew one-quarter mile from the crossing," she had no "apparent disability" that would compel the Defendants to slow the train. ECF 34, PgID 886–87.

The evidence from which a jury may draw any conclusions in this case—for either side—is sparse. The relevant events took place in the span of 40 seconds. Gallacher and Fischer provided deposition testimony, a brief police report summarized their statements in the immediate aftermath of the accident, and certain mechanical events were recorded by equipment on the train and railroad crossing. The record provides nothing else to illumine what happened that day.

Frye's theory of what happened turns on the police report. On its face, the report does not necessarily contradict the deposition testimony of Gallacher and Fischer, but neither does it confirm their stories. The report reads:

> GALLACHER STATED THE 4200 FOOT TRAIN WAS N/B FROM OHIO, WHEN HE WAS APPROACHING THE WEST RD. CROSSING HE OBSERVED THE FEMALE INSIDE THE CROSSING ON THE TRACKS, HE STATED HE APPLIED THE BRAKES AND BEGAN TO SOUND HIS HORN. HE STATED HE SOUNDED THE HORN FOR APPROXIMATELY 25-30 SECONDS. HE STATED THE PEDESTRIAN APPEARED TO HAVE TROUBLE MOVING HER BIKE OFF THE TRACKS. HE STATED THE PEDESTRIAN NEVER LOOKED UP AT THE ONCOMING TRAIN. HE STATED SHE SEEMED TO BE PREOCCUPIED WITH THE BIKE OR POSSIBLY LISTENING TO MUSIC. I ASKED THE CONDUCTER WHERE IN RELATION TO THE CROSSING HE BELIEVED THE VICTIM TO BE AT AND HE STATED RIGHT IN THE MIDDLE OF THE CROSSING.

6

ECF 34-13, PgID 1092. The report does not state precisely when the defendants spotted Shyan, or exactly where she was in the moments before impact. And the order of events listed in the relevant portion of the report is necessarily jumbled: both parties concede that the horn began to sound long before the brakes were applied. At minimum, the police report is at least ambiguous.[1]

At summary judgment, the Court does not "weigh the evidence and determine the truth of the matter," but rather determines "whether there is a genuine issue for trial." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 667 (6th Cir. 2000) (quoting *Anderson*, 477 U.S. at 249) (quotation marks omitted). The police report provides minimal evidence for Frye's version of the story; there is, therefore, a genuine factual dispute.

The dispute is also material. If Shyan was already on the tracks and visibly struggling or noticeably oblivious to the oncoming train, a reasonable jury could find the facts indicated to the train operators that she would not move "regardless of the imminent danger." *Tomes*, 240 Mich. at 139. In that case, the operators would have been obligated to slow the train. *Id.* The facts in dispute, then, are material. Summary judgment is therefore unwarranted on the count asserting negligence for failure to slow the train.

---

[1] The understandably loose punctuation of the police report creates further ambiguity. For instance, should one read that "Gallacher stated the 4200 foot train was n/b from Ohio. When he was approaching the West Rd. crossing, he observed the female inside the crossing on the tracks," or that "Gallacher stated the 4200 foot train was n/b from Ohio when he was approaching the West Rd. crossing. He observed the female inside the crossing on the tracks." *See* ECF 34-13, PgID 1092. The former can be read to suggest that Shyan was on the tracks earlier than Defendants allege, while the latter does not speak to when she was first spotted on the tracks.

7

III.     Failure to Maintain the Crossing

Michigan law places certain duties upon railroads regarding the construction and maintenance of grade crossings. Specifically:

> (1) A railroad owning tracks across a public street or highway at grade shall at its sole cost and expense construct and thereafter maintain, renew, and repair all railroad roadbed, track, and railroad culverts within the confines of the street or highway, and the streets or sidewalks lying between the rails and for a distance outside the rails of 1 foot beyond the end of the ties. . . .
>
> (2) The space between the rails and for a distance outside of the rails of 1 foot beyond the end of the ties shall be surfaced with a material which shall be as durable and as smooth as the adjacent street or highway surfacing, and shall have minimum qualifications not inferior to wooden planks, and shall conform, as nearly as reasonably may be, to the configuration of the adjacent street or highway. . . .

Mich. Comp. Laws § 462.309.

Frye alleges that Defendant Conrail breached its statutory duty by failing to maintain the crossing surface at the West Road grade crossing. Frye has alleged that the surface was "rough and had numerous ruts," and developed as evidence photographs purportedly documenting the condition. ECF 35, PgID 1119; ECF 35-5. She also alleged, speculatively, that the conditions caused Shyan's bicycle tire to become stuck, resulting in the accident.

Conrail now argues that its duty to maintain the surface was limited to "one foot beyond the end of the ties within the roadway and two feet beyond the end of the street or highway" and that there is absolutely no evidence suggesting that the condition of the surface was the cause of the accident, ECF 37, PgID 1668. Conrail adds that even if there was any evidence, the allegedly rough surface was "open and obvious," thus precluded any type of a claim. ECF 34, PgID 894.

Conrail's claims may be correct concerning the one- and two-foot boundaries but the boundaries are irrelevant to Frye's claim that Shyan's bike became stuck in a rut while on

8

the tracks. Conrail has an undisputed duty to maintain the portion of the crossing where the ruts lie, *see* Mich. Comp. Laws § 462.309(1), (2), and the "open and obvious" doctrine does not diminish that duty. *Johnson v. City of Bay City,* No. 175961, 1996 WL 33323962, at *3 (Mich. Ct. App. July 19, 1996) ("Because there is a statutory obligation on the railroad to repair and maintain the railroad tracks, the open and obvious rule does not absolve the railroad of this obligation."); s*ee also Benton v. Dart Properties, Inc.*, 270 Mich. App. 437, 441 (2006) (noting that "the open and obvious danger doctrine is not available to deny liability when the defendant has a statutory duty to maintain the premises in reasonable repair"); *Walker v. City of Flint*, 213 Mich. App. 18, 22 (1995) (noting the same).

But Conrail also makes a more compelling argument. It claims that there is no evidence that the surface condition was the cause of the accident. According to Conrail, the testamentary evidence is unequivocal that Shyan had no trouble with the crossing's surface in particular, ECF 37, PgID 1668.

At summary judgment all evidence must be viewed in a light most favorable to Frye, and every reasonable inference drawn in her favor. There are three relevant pieces of evidence:

1. Shyan had trouble moving her bike off the track, ECF 35-2, PgID 1139;

2. There were many ruts in grade crossing, some large enough for a bike tire, ECF 35-5, 35-6; and

3. The grade crossing's condition was not "reasonably safe" and fell below CSX's own standards and those required by Michigan law, ECF 35-9, PgID1269.

And there are three necessary inferences:

1. Shyan did not get out of the way of the train because she was having trouble with her bike;

9

2. She had trouble because her bike was stuck in a rut; and

3. If Conrail had complied with Michigan law, the bike would not have become stuck.

The question, then, is whether the inferences are reasonable.

Reaching the conclusion Frye urges is difficult. At trial, a jury would be asked why an otherwise able-bodied girl did not move out of the way of an oncoming, audible, and plainly visible train. Neither Gallacher nor Fischer stated with certainty what caused Shyan to remain on the tracks. Frye alleges that it was because Shyan's bicycle wheel got stuck in a rut. She submits some, but very little, evidence of that fact, and as the nonmovant all inferences are drawn in her favor. A reasonable jury could find that the condition of the tracks was a proximate cause of Shyan's death.[2] Summary judgment on the failure-to-maintain count is therefore unwarranted.

IV. Failure to Train

Defendants concede that the alleged failure to train employees on inspecting the grade crossing remains an issue in the case. *See* ECF 34, PgID 875. But they argue that the claim is irrelevant "[s]ince the condition of the crossing surface was not a cause of the accident[.]" *Id.* at 895.

As explained, the condition of the crossing and its potential role in the accident remains a genuine issue of material fact. It follows that a failure to train employees on inspection protocol could lead to a dangerous crossing remaining unremedied. Summary judgment for Defendants on this count is unwarranted.

---

[2] The Court emphasizes, however, that a reasonable jury could easily find otherwise. Although Frye's evidence is not "so one-sided that [she] must prevail as a matter of law[,]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), it is sparse.

V.   Failure to Properly Sound the Horn

Frye's complaint alleged that Defendants "breached their duty to give reasonable and timely warning of the train's approach by failing to give a proper audible warning." ECF 1-2, ¶ 37. She claimed that the horn was neither loud enough nor, in violation of federal regulations, sounded in the proper sequence. She alleges that Shyan "was physically unable to hear the train horn in sufficient time to react" and the inability was a "direct and proximate cause of the train striking the Decedent[.]" *Id.*, ¶¶ 42, 43. Defendants argue that the horn was sounded, that it was working properly, and that the sequence of its blasts are immaterial to Plaintiff's claims. *See* ECF 37, PgID 1666–68.

Federal regulations govern the use of locomotive horns when approaching grade crossings. They provide:

> [T]he locomotive horn shall begin to be sounded at least 15 seconds, but no more than 20 seconds, before the locomotive enters the crossing. It shall not constitute a violation of this section if, acting in good faith, a locomotive engineer begins sounding the locomotive horn not more than 25 seconds before the locomotive enters the crossing, if the locomotive engineer is unable to precisely estimate the time of arrival of the train at the crossing for whatever reason.

49 C.F.R. § 222.21(b)(2). When a locomotive approaches a public highway-rail grade crossing, it must sound its horn with "two long blasts, one short blast and one long blast . . . and shall be repeated or prolonged until the locomotive occupies the crossing. This pattern may be varied as necessary where crossings are spaced closely together." *Id.* at (a). Frye claims the regulations were pertinent to the operation of the train at the time of the accident and Defendants do not dispute it. *See* ECF 1-2, ¶ 39.

Under Michigan law, "[w]hile violation of a statute creates a rebuttable presumption of negligence, the plaintiff still must show that such negligence was the proximate cause

11

of his injuries." *Cassibo v. Bodwin*, 149 Mich. App. 474, 477 (1986) (citations omitted). Proximate cause is "that which operates to produce particular consequences without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred." *Lamp v. Reynolds*, 249 Mich. App. 591, 600 (2002) (quoting *Helmus v. Dep't of Transp.*, 238 Mich. App. 250, 256 (1999)).

Two hurdles prevent Frye from defeating Defendants' motion for summary judgment on the counts relating to the horn. First, Defendants have introduced evidence that the horn was fully functional at the time of the accident and properly sounded. Fischer testified that he tested the horn earlier that day, that he sounded it for approximately 20 seconds before entering the crossing and that he could hear it. ECF 34-5, PgID 997, 1001–02. Frye's previous brief argued that Defendants had not offered proof that the horn was loud enough and noted, "Defendants, as the moving parties, have the initial burden of showing that there is an absence of evidence to support each of Plaintiff's claims." ECF 21, PgID 577. But the argument was largely omitted in Plaintiff's current brief, which only mentions in a footnote that "Plaintiff is not making a claim specifically based upon whether the horn met the audibility requirements. With regard to how loud the horn actually was, Plaintiff's only point is that audibility is relevant in the case with regard to any comparative fault[.]" ECF 35, PgID 1128, n.16. Defendants have offered proof that the horn was working as it should with Fischer's testimony and Frye has offered nothing to the contrary. Frye has therefore failed to carry her burden to defeat Defendants' motion. *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (recognizing that a plaintiff "may not rest upon [her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.").

Defendants have not, however, offered proof that the operators followed the federally mandated sequence, but to prevail on a claim of negligence based upon violation of a statute, a plaintiff must show proximate cause. Defendants offer unrebutted proof that approximately 20 seconds prior to entering the grade crossing, the train's horn sounded. *See* ECF 34-5, PgID 1001; ECF 34-8, PgID 1058; ECF 34-13, PgID 1093. The train's lights and the lights and bells of the crossing itself were evidently fully functional. ECF 34, PgID 879. Yet Shyan did not get out of the way of the train.

The train crew's alleged choice to blast the horn for a solid 20 seconds—exceeding, in fact, the federal requirement—as they approached a girl on the tracks, rather than break up the noise into intermittent bursts, would not have made a difference. Because no reasonable jury could find otherwise, Defendants are entitled to summary judgment on that count. *See Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993) ("If a reasonable jury could not find that the nonmoving party is entitled to a verdict then there is no genuine issue for trial and summary judgment is appropriate.").

VI. <u>Defendant Alan Gallacher</u>

Defendants argue that Alan Gallacher, the conductor of the train, is entitled to summary judgment because he was not operating the locomotive and because he had nothing to do with the grade-crossing surface. ECF 34, PgID 895. In response, Frye points to CSX's Operating Rules, which require all crew members to take necessary actions, including operating the emergency brake, when the engineer fails to do so. ECF 35, PgID 1127–28. Defendants made no reply in their brief.

To establish negligence for failure to train, Frye must first show that Defendants breached a duty. *Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18, 20 (2009). "As a

general rule, internal company policies may not be used to establish a legal duty in a negligence claim" so "[u]nless compliance with the policies or rules relates to an underlying law or regulation, no duty attaches for a violation of an internal policy." *Burnside Indus., LLC v. CB Richard Ellis, Inc.*, No. 268343, 2006 WL 2418937, at *2 (Mich. Ct. App. Aug. 22, 2006). Frye's claim against Gallacher rests solely on CSX's own rule that imposed upon Gallacher a duty to act if Fischer failed to do so. Without more, the CSX rule did not create an actionable duty. The Court will therefore dismiss the claims against Gallacher.

VII. Mediation

The underlying facts of the case are grave and the evidence is limited. Neither party should feel confident in the outcome of a jury trial. The Court will therefore order the parties to mediate prior to trial. The Court will enter a separate order appointing a mediator and further directing the parties.

**WHEREFORE**, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment [34] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Gallacher are **DISMISSED WITH PREJUDICE**.

An updated scheduling order will follow.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
Dated: September 18, 2017    United States District Court Judge

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 18, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager